(C.D. 3837)

Sᴀɴᴋʏᴏᴅᴀɪ Cᴏʀᴘ. *v.* Uɴɪᴛᴇᴅ Sᴛᴀᴛᴇs

United States Customs Court, Third Division

(Decided June 2, 1969)

*Stein & Shostak* (*Leonard M. Fertman* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

Before Rɪᴄʜᴀʀᴅsᴏɴ and Lᴀɴᴅɪs, Judges

RICHARDSON, Judge: The merchandise of these consolidated protests described on the invoices as wooden seats, was entered and classified in liquidation under item 696.15 of the Tariff Schedules of the United States as parts of yachts or pleasure boats, which provision carries a duty rate of 12 per centum ad valorem. It is claimed in the protests that the merchandise should be classified under item 727.35 of the tariff schedules as furniture of wood other than chairs, at a duty rate of 10.5 per centum ad valorem.

It is not disputed that the imported merchandise is dressed and worked lumber, cut to size specifically for installation in certain parts of the hulls of plastic boats manufactured in this country by Lancaster Boat Corp. of Los Angeles, California. In fact, plaintiff's counsel concedes that the imported merchandise constitutes dedicated parts of such boats. Hence, the issue before the court is whether the merchandise at bar is more particularly described as furniture as claimed.

The competing tariff provisions read:

[classified under]
    Schedule 6, Part 6, Subpart D:
        Yachts or pleasure boats . . . and
        parts thereof:

| | | |
|---|---|---|
| 696.15 | Parts _____ | 12% ad val. |

[claimed under]
    Schedule 7, Part 4, Subpart A:
        Furniture . . . not specially provided
        for:

        Of wood:

        Other:

| | | |
|---|---|---|
| 727.35 | Furniture other than chairs _____ | 10.5% ad val. |

The record before the court consists of the official papers which are deemed in evidence, the testimony of Albert O. Nakazawa, plaintiff's president, and five exhibits. It appears from the evidence that the merchandise at bar consists of seats, support blocks, keel strips, gunnel stripes, and transom blocks in various bundles said to constitute seats. These items, with the exception of the transom blocks, when assembled in combination with each other with clamps and screws are said by the witness Nakazawa to form complete seats in the plastic boats in which the items are installed, utilizing the sides and floor of the boat for support. And the keel and gunnel strips, according to Mr. Nakazawa, perform the additional function of strengthening the plastic boat. The transom blocks, positioned at the stern end of the boat, are said to perform the function of engaging the clamps of the

outboard motor and thereby preventing contact between the clamps and plastic hull. No claim is made by plaintiff for a different classification for the transom blocks.

One item not mentioned in the testimony of Mr. Nakazawa nor reflected in the packing lists but which is clearly visible in the pictoral representation of the installed seat (plaintiff's exhibit 1) are boards, dimensions of which approach those of the seats. These boards are affixed to the underside of the seats perpendicular to the seats and flush with the support blocks positioned between the seats and keel strip. The ends of these boards appear to be resting in some sort of metal hangars suspended in the vicinity of the clamps which secure the seats to the boat sides. The absence of specifications for these seat boards in the packing lists at bar is indicative that the imported pieces do not comprise a complete article as shown in exhibit 1, in knocked down condition. Also, in this connection, Mr. Nakazawa testified that metal supporting blocks are used in lieu of wooden support blocks in the 10 foot boat, but that these metal blocks were not imported. It is noted, consistent with this testimony, that no support blocks of any description are reflected on the packing list covered by the entry under protest 66/70151 (which covers material for a 10 foot boat). Also, the hardware essential for installation of these seats is not reflected on the packing lists before the court. And the gunnel strip, whose dimensions according to plaintiff's exhibit 5 and the testimony of Nakazawa is ¾" x 1¼" x 90" or 108", is not shown on the packing list covered by the entry under protest 66/70145, which entry covers material for an 8 foot boat as well as for a 10 foot boat.

On the matter of "movability" of the imported article, the record shows that the seats and the transom blocks occupy fixed and predetermined positions in the boat in which they are installed. With respect to the seat, counsel for the Government elicited the following testimony on this subject from the witness Nakazawa on cross-examination (R. 18):

Q. Plaintiff's Exhibit 2, isn't that a seat?—A. Yes.

Q. Can that be used in any part of the boat?—A. Only as a seat.

Q. But in any part of the boat, either the front, the center, or the back?—A. No, this is only made, I believe, for the front seat and it can only be used in the front seat because of the cut of the sides.

Q. So they are particularly cut to certain sizes to fit a certain area of the boat?—A. Yes.

Q. And cannot be moved from one place to another?—A. That is right.

The foregoing comprises the salient evidence bearing on the issue of classification. Plaintiff argues that since the boat seats are specifi-

cally provided for as furniture, the classification of such seats as parts of boats was erroneous perforce of General Headnote 10(ij) to the tariff schedules which provides that a provision for "parts" of an article does not prevail over a specific provision for such part.

We are unable to agree with plaintiff's contention. Item 727.35 of the tariff schedules on which plaintiff relies is a *residual* and *qualified* tariff provision. It is *residual* because of the presence in the superior heading of a "not specially provided for" clause. And it is *qualified* because by statutory definition* of the term "furniture" as used in item 727.35 classification thereunder is confined to articles which are, among other things, "movable articles of utility". See *Arthur J. Humphreys, Packard-Bell Electronics* v. *United States*, 59 Cust. Ct. 231, 238, C.D. 3128, 272 F. Supp. 951 (1967), affirmed 56 CCPA —, C.A.D. 956 (1969). Both of these restrictions or limitations combine to defeat plaintiff's contention here on the basis of the evidence before the court.

Since plaintiff has, at the very outset, conceded that the imported merchandise constitutes dedicated parts of a boat, and since classification of such merchandise was made under a specific tariff provision for parts of yachts or pleasure boats in which category the involved parts fall, classification of this merchandise under a *residual* provision is preempted as a matter of law. *United States* v. *Lansen-Naeve Corp.*, 44 CCPA 31, C.A.D. 632 (1957). *Accord, Arthur J. Humphreys, Packard-Bell Electronics* v. *United States, supra*. The latter case which was cited to us by plaintiff involved an alternative claim for classification of certain wood radio-phonograph cabinets under the involved item 727.35 as against classification of these cabinets by the customs officials under item 685.50 of the tariff schedules as parts of radio-phonograph combinations. In rejecting this alternative claim for classification which was advanced by the importer, the second division of this court stated (page 238) :

> . . . And, in *United States* v. *Lansen-Naeve Corp.*, 44 CCPA 31, C.A.D. 632, it was held that a "not specially provided for" clause in a use provision excludes articles enumerated elsewhere by description or *eo nomine* designation.
>
> Applying these principles, we conclude that even though the cabinets are furniture, they are more specifically provided for within the superior heading encompassing radio-phonograph combinations. . . .

And even if item 727.35 were not a *residual* provision, plaintiff has failed to bring itself within the qualification that the imported merchandise be a "movable article of utility" to warrant classification under item 727.35. The evidence at bar clearly shows that the imported merchandise is anything but a "movable" article, and that the article

---

*Headnote 1, subpart A, part 4, schedule 7, Tariff Schedules of the United States.

must of necessity occupy a fixed position in order to retain its utility value. As such, the imported article is the antithesis of "movability".

The most that the evidence at bar establishes insofar as the seat is concerned is that the imported merchandise constitutes part of an article which when complete becomes a boat seat. And such proof is of no value here in any case absent a claim for classification under a provision for "parts". It, therefore, follows that plaintiff has wholly failed to present any evidence which defeats the classification of the instant merchandise as parts of pleasure boats. Consequently, the protests are overruled.

Judgment will be entered accordingly.