**PARTS MANUFACTURING ASSO-CIATES, INC.**

v.

**UNITED STATES.**

C.D. 4552; Court Nos. 70/53017, 70/53022, 70/53023.

United States Customs Court.
July 17, 1974.

Byrum, Byrum & Burris, Charlotte, N. C. (Robert N. Burris, Charlotte, N. C., of counsel), for plaintiff.

Carla A. Hills, Asst. Atty. Gen. (James Caffentzis, New York City, trial atty.), for defendant.

RE, Judge:

The question presented in this case pertains to the proper classification, for customs duty purposes, of certain aircraft passenger seats. The seats were manufactured in England and entered at the port of Charleston, South Carolina in 1969. At the trial, on plaintiff's motion, and without objection, Court Nos. 70/53017, 70/53022, and 70/53023, were consolidated.

The seats were classified by the customs officials under item 727.55 of the Tariff Schedules of the United States as "[f]urniture, and parts thereof, not specially provided for: * * * [o]ther." Duty was consequently assessed at the rate of 16 per centum ad valorem. Plaintiff contests that classification, and

urges that the proper classification is under one of two suggested tariff items.

Plaintiff's primary claim is that the aircraft seats are properly classifiable under item 694.60 of the tariff schedules which covers other parts of aircraft and spacecraft, with a duty of 7 per centum ad valorem. Alternatively, plaintiff urges that the aircraft seats are properly dutiable under item 727.02 of the tariff schedules, with duty at the rate of 9 per centum ad valorem. Item 727.02 covers "dentists', barbers' and similar chairs," and, in essence, plaintiff maintains that the aircraft chairs are *ejusdem generis* with those enumerated in the alternatively claimed tariff item.

The key to the proper classification of any imported article is always to be found in the various competing provisions of the tariff schedules. Many anomalies of classification of merchandise tend to disappear when the competing items are compared, and the underlying congressional intent is given effect.

In the case at bar, aircraft seats were classified as furniture, whereas the importer maintains that they should have been classified as other parts of aircraft, or as chairs similar to dentists' or barbers' chairs.

The following are the pertinent statutory provisions:

"*General Interpretative Rules.* For the purposes of these schedules—

* * * * * *

▇(ij) a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part."

*Classified under:*

Schedule 7, part 4, subpart A:

"*Subpart A headnotes:*

1. For the purposes of this subpart, the term '*furniture*' includes movable articles of utility, designed to be placed on the floor or ground, and used to equip dwellings, offices, restaurants, libraries, schools, churches, hospitals, or other establishments, aircraft, vessels, vehicles, or other means of transport, gardens, patios, parks, or similar outdoor places, even though such articles are designed to be screwed, bolted, or otherwise fixed in place on the floor or ground; and kitchen cabinets and similar cupboards, seats and beds, and sectional bookcases and similar sectional furniture, even though designed to be fixed to the wall or to stand one on the other; but the term does not include—[Exceptions not applicable.]"

* * * * * *

"Furniture, and parts thereof, not specially provided for:

* * * * * *

727.55   Other .......... 16% ad val."

*Claimed under:*

Schedule 6, part 6, subpart C:

"Aircraft and spacecraft, and parts thereof:

* * * * * *

694.60   Other parts ...... 7% ad val."

*Claimed under (alternatively):*

Schedule 7, part 4, subpart A:
"Furniture designed for hospital, medical, surgical, veterinary, or dental use; dentists', barbers' and similar chairs with mechanical elevating, rotating, or reclining movements; and parts of the foregoing:

727.02   Dentists', barbers' and similar chairs with mechanical elevating, rotating, or reclining movements, and parts thereof .............. 9% ad val."

There is no factual dispute. The importations consist of aircraft passenger seats ordered for installation in the YS–11 aircraft. The seats were specifically designed ofr the YS–11 which is an intermediate transport passenger aircraft. The seats were especially constructed to meet certain Federal Aviation Administration requirements. They contain armrests, removable cushions for life flotation equipment, ash trays, holes for receiving meal trays, seat belts, and

meal trays on their backs. Each of the seats was connected into a track built into the floor of the aircraft.

Plaintiff, in its brief, asserts that it submitted "uncontroverted evidence that said seats could only be used for the YS–11 aircraft and were an integral part thereof, and further that the YS–11 aircraft as presently configured and certified by the [Federal Aviation Administration] could only be used as a passenger aircraft and that these seats were an essential part and that the YS–11 aircraft was incapable of properly functioning without them." (Plaintiff's brief, p. 2)

Plaintiff cites certain cases in support of its primary contention that the seats should have been classified, and held dutiable, as parts of aircraft. There exists a great wealth of judicial literature on the subject of what constitutes "parts" for customs duty purposes. "Parts" is a word of art in customs law. Indeed, its development and evolution is an interesting one. No purpose, however, would be served to review the many cases that have given the word its present meaning. See discussion of leading cases in Vilem B. Haan et al. v. United States, 332 F.Supp. 182, 67 Cust.Ct. 104, C.D. 4260 (1971).

In support of its contention that the seats are to be classified as parts of aircraft, in addition to the *Vilem B. Haan* case plaintiff relies on Herbert G. Schwarz, dba Ski Imports v. United States, 284 F.Supp. 792, 60 Cust.Ct. 522, C.D. 3447 (1968), aff'd, 417 F.2d 1391, 57 CCPA 19, C.A.D. 971 (1969); Sankyodai Corp. v. United States, 62 Cust. Ct. 630, C.D. 3837 (1969) and Engis Equipment Company v. United States, 284 F.Supp. 798, 60 Cust.Ct. 436, C.D. 3413 (1968).

In all of the cited cases the law of "parts" was discussed to the extent therein deemed necessary. In the *Vilem B. Haan* case, headrests for automobile seats had been classified under a tariff provision that covered pillows, cushions, mattresses and similar furnishings. Since the headrests had been designed, and were used extensively as automobile seat headrests, for the comfort and safety of front seat passengers in automobiles, the court held that they should properly have been classified under the provision covering "[f]urniture designed for motor-vehicle use, and parts thereof."

In the *Herbert G. Schwarz* case the Court of Customs and Patent Appeals affirmed this court in sustaining the classification of certain automobile "luggage racks" and "ski carriers" under a provision that covered articles of iron or steel, not coated or plated with precious metal. The courts thereby overruled the importer's claim that the merchandise should have been classified as fittings or mountings designed for motor vehicles.

In the *Sankyodai Corp.* case wooden seats for use in certain plastic boats were classified as parts of yachts or pleasure boats. The importer conceded that they were dedicated for use as parts of such yachts or pleasure boats, but contended that they were more specifically provided for under the tariff provision that covered furniture of wood. In sustaining the classification of that particular importation the court stated:

> "The most that the evidence at bar establishes insofar as the seat is concerned is that the imported merchandise constitutes part of an article which when complete becomes a boat seat. And such proof is of no value here in any case absent a claim for classification under a provision for parts'. It, therefore, follows that *plaintiff has wholly failed to present any evidence which defeats the classification of the instant merchandise as parts of pleasure boats.* Consequently, the protests are overruled." (Emphasis added.) 62 Cust.Ct. at 634.

In the *Engis Equipment Company* case plaintiff maintained that certain projectors, scales and zero setting attachments were parts of jig-boring machine tools. Since plaintiff "failed to show that the imports involved were manufactured and dedicated solely for use on jig-boring ma-

chine tools and had no other useful purpose," the protest was overruled.

In the present case, in support of its primary claim, plaintiff has quoted passages from the opinions of the cited cases for the purpose of persuading the court that the aircraft seats are *parts* of the aircraft. Whether they are to be classified as *parts,* for customs duty purposes, however, depends upon the pertinence or applicability of the competing provisions of the tariff schedules, and the meaning of "parts" in customs law.

■ The aircraft seats have been classified as "furniture," and there is a statutory presumption that they have been correctly classified. 28 U.S.C. § 2635(a) (1970). See also Sanji Kobata et al. v. United States, 326 F.Supp. 1397, 66 Cust. Ct. 341 (1971); Nishimoto Trading Company, Ltd., et al. v. United States, 72 Cust.Ct., C.D. 4504 (1974), appeal pending.

Headnote 1, subpart A, part 4, schedule 7 sheds considerable light upon the congressional intent as to what articles constitute furniture. In pertinent part, that headnote states that:

> " * * * the term *'furniture'* includes movable articles of utility, designed to be placed on the floor or ground, and used to equip * * * aircraft * * * even though such articles are designed to be screwed, bolted, or otherwise fixed in place on the floor * * *."

The headnote makes it abundantly clear that the term "furniture" includes aircraft furniture. Furthermore, it is obvious that, as applied to aircraft, passenger seats comprise a substantial, if not a major, portion of aircraft furniture. Consequently, it is important to determine the applicability of General Interpretative Rule 10(ij) to the case at bar.

General Interpretative Rule 10(ij) states that a "provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part." Clearly, therefore, even if the aircraft seats may otherwise be deemed to be "parts" of the aircraft, they cannot be classified as "parts" if they are included in the more "specific provision" for "furniture."

■ The meaning and applicability of rule 10(ij) has been treated in a large number of cases. See United States v. General Electric Co., 58 CCPA 152, C.A.D. 1021 (1971). In many of the cases, the question was whether the importation was, in fact, included in the "specific provision." As stated in the *Vilem B. Haan* case, the applicability of rule 10(ij) "assumes the existence of a 'specific provision' which covers the 'part' of the particular article." 332 F. Supp. at 186, 67 Cust.Ct. at 111. For example, in the *Vilem B. Haan* case, the court held that automobile headrests were not specifically provided for in the provision under which they were classified. The specific provision there covered "pillows [or] cushions," not "automobile headrests." Hence, since they were not provided for in "a specific provision for such part," they were deemed properly classifiable as *parts* of furniture designed for motor vehicle use.

As illustrated in the *Vilem B. Haan* case, whether the particular article is specifically provided for, i. e., whether there is a "specific provision for such part," is not always free from doubt. In all cases the court must determine if the "part" is embraced in the *eo nomine* or "specific provision." If it is, then, by virtue of rule 10(ij), such a specific provision prevails over a "parts" provision.

Recently, for example, in Oxford International Corp. v. United States, 72 Cust. Ct., C.D. 4540 (1974), the court had to determine whether a bicycle mirror was specifically provided for in a tariff provision that covered mirrors. The tariff provision covered mirrors, with or without frames or cases, not over one square foot in reflecting area. The importation consisted of a mirror head, which was framed, together with other parts that comprised a "mounting bracket" to permit attachment of the bicycle mirror to a

bicycle handlebar. It was admitted that the bicycle mirror, consisting of the mirror portion and the mounting portion, comprised a commercial unit dutiable as an entirety.

The court, after examining the importation, determined that the challenged specific provision for mirrors did not embrace the entirety known and sold as a bicycle mirror which contains a quantity of parts in addition to the mirror itself. Hence, the court held that the bicycle mirror was, for customs duty purposes, classifiable and dutiable, as other parts of bicycles, as claimed.

■ In the present case, a reading of the furniture provision, together with the preceding headnote, leaves no doubt that the aircraft seats were intended to be included in the furniture provision. To classify the aircraft seats as parts of aircraft, as claimed, would be tantamount to denying judicial effect to that portion of the headnote that pertains to aircraft furniture.

■ The headnote clearly expresses the legislative intent that aircraft furniture be included in the furniture provision. No citation of authority is required for the cardinal principle of statutory construction that requires that the courts give effect to the intent of the legislature in an area reposing within its competence.

Since the court finds that the aircraft seats are aircraft furniture, included in the tariff item covering "furniture," it follows that the classification of the customs officials was correct.

Plaintiff cites a number of cases for the proposition that if the classification of an article is in doubt, the court will resolve that doubt in favor of the import-

er since the intention of Congress to impose a higher duty should be expressed in clear and unambiguous language. American Net & Twine Co. v. Worthington, 141 U.S. 468, 12 S.Ct. 55, 35 L.Ed. 821 (1891); Hartranft v. Wiegmann, 121 U.S. 609, 7 S.Ct. 1240, 30 L.Ed. 1012 (1887). These cases and others, however, are not controlling where, as in the case at bar, there is no doubt as to the legislative intent of Congress. See United States v. St. Joseph's Church, 48 CCPA 42, 45, C.A.D. 761 (1960).

In view of the foregoing, it is the determination of the court that plaintiff has not succeeded in proving that the aircraft seats were erroneously classified, and that they should have been classified as parts of aircraft, as claimed.

It is the determination of the court that the aircraft seats were correctly classified under item 727.55 of the tariff schedules, as other furniture. Consequently, it is not necessary to pass upon plaintiff's alternative claim that they are similar to dentists' and barbers' chairs under item 727.02 of the tariff schedules. No proof was submitted at the trial which would permit a finding that the aircraft seats are "similar" to dentists' or barbers' chairs. It may, nevertheless, be stated that nothing before the court would lend support to the assertion that Congress considered aircraft seats to be *ejusdem generis* with the special purpose chairs specifically named in item 727.02. See provision 94.02 and *Notes* thereto in *Explanatory Notes to the Brussels Nomenclature* (1967).

The classification of the customs officials, which classified the imported aircraft passenger seats under item 727.55 of the tariff schedules, is sustained. Judgment will issue accordingly.